UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HEATHER LYNN SCHAEFER,<br><br>Defendant. | 4:21-CR-40039-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND DENYING MOTION TO SUPPRESS |

Defendant, Heather Lynn Schaefer, is charged under 21 U.S.C. §§ 841(a)(1) and 846 with one count of conspiracy to distribute a controlled substance. Docket 1. Schaefer moves to suppress "all evidence located pursuant to a search of her residence at 415 West 15th Street #18, Yankton South Dakota on May 19, 2020." Docket 41 at 1. Later, Schaefer additionally asked the court to suppress evidence obtained from a search of Schaefer's person that occurred on May 19, 2020, just before the search of her home. Docket 64 at 117. The United States resists Schaefer's motion to suppress. Docket 49. The court referred Schaefer's motions to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Duffy conducted an evidentiary hearing and recommends that Schaefer's motion to suppress be denied. Docket 58 at 15. Schaefer timely objected to the Report and Recommendation. Docket 69. For the following reasons, the court adopts the

Report and Recommendation as modified below and denies Schaefer's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980) (holding that dispositive motions under 28 U.S.C. § 636(b)(1) are subject to de novo review by the district court). In conducting a de novo review, this court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

Schaefer objects to four factual findings in the Report and Recommendation. Docket 69 at 2-3. First, Schaefer objects to the magistrate judge's finding that "[t]he text messages extracted from [the Source of Information's] phone also confirmed that Ms. Schaefer went to Sioux City on at least one occasion to obtain meth for distribution." *Id.* at 2 (quoting Docket 58 at 3). Schaefer argues that this finding is a mischaracterization of Agent

Pennock's testimony, because he did not definitively know that Schaefer went to Sioux City to obtain meth. *Id.* According to Schaefer, Agent Pennock merely "believed" that Schaefer went to Sioux City to obtain meth. *Id.*

The record indicates that Agent Pennock's belief, while not definitively corroborated, was supported by his investigation of Schaefer. *See* Docket 64 at 40-42. In one text message read by Agent Pennock, Schaefer told the Source that she was at the Hard Rock Café in Sioux City, that the Source was "too late" in responding to her, but that she would return later and sell the Source a "ball." *Id.* at 41-42. Agent Pennock learned that both the Source and Schaefer were active in buying and selling methamphetamine. *Id.* at 39. And Agent Pennock had personally read text messages between the Source and Schaefer that led him to believe that they bought and sold methamphetamine to each other. *Id.* at 39-40. Thus, the court sustains Schaefer's objection and finds that an accurate statement of facts is: "The text messages extracted from [the Source of Information's] phone also *led Agent Pennock to believe* that Ms. Schaefer went to Sioux City on at least one occasion to obtain meth for distribution." (modification in italics).

Second, Schaefer objects to the following finding of the magistrate judge concerning Autumn Novak, Schaefer's state parole officer:

> Agent Pennock or another law enforcement agent contacted [Officer] Novak in April 2020 and told her they had evidence Ms. Schaefer was engaged in drug activities. . . . [Officer] Novak testified at the [suppression] hearing she received details of Ms. Schaefer's suspected drug activities from police, but she could not recall those details at the time of the hearing.

3

Docket 69 at 2 (quoting Docket 58 at 5-6). Schaefer argues that, on cross examination, "Officer Novak admitted that she did not know the specifics." *Id.* (citing Docket 64 at 16). During cross examination, Officer Novak agreed that law enforcement told her that they suspected Schaefer of engaging in "drug activity." Docket 64 at 16. Immediately after that, Schaefer's attorney asked Officer Novak, "But you knew nothing beyond that?" *Id.* Officer Novak responded, "Not the specifics, no." *Id.*

Schaefer's objection relies on just one of Officer Novak's responses while overlooking the rest of her testimony. Elsewhere in her testimony, Officer Novak identified several specific details that law enforcement shared with her in April and May 2020. Law enforcement notified Officer Novak that, based on "monitoring who [Schaefer] was in contact with and where she was going," Schaefer was "involved in some drug activity." *Id.* at 11, 15, 20. Officer Novak was also informed that some of this information came from an "informant." *Id.* at 17. On or about May 19, 2020, law enforcement told Officer Novak that Schaefer's "drug-related" activity had "increased." *Id.* at 23. She was told that law enforcement had a warrant to track Schaefer's phone. *Id.* at 16. These details support the magistrate judge's finding. Thus, the objection is overruled.

Third, Schaefer objects to the following finding of the magistrate judge:

> [Agent Pennock] "found [Schaefer's] visits to casinos suspicious because the texts between Ms. Schaefer and [the Source] indicated Ms. Schaefer visited a casino in Sioux City to obtain drugs once and she gave drugs to [the Source] at a casino in Yankton." . . . "[F]urthermore, Agent Pennock indicated that in a 2015 drug case involving Ms. Schaefer, a controlled buy from her took place at a gaming room inside a bar."

4

Docket 69 at 2-3 (quoting Docket 58 at 6). Schaefer argues that "[t]he testimony and evidence indicate that Ms. Schaefer visited a casino in Sioux City at some point," but "the messages do[] not support a finding that the visit to the casino in Sioux City was to obtain drugs." *Id.* at 3. And she argues that "Agent Pennock could not confidently say that the controlled by [sic] took place from Ms. Schaefer inside a gaming room at a bar." *Id.*

As discussed regarding Schaefer's first factual objection, the testimony supports the magistrate judge's finding that Agent Pennock believed Schaefer went to a casino in Sioux City to buy drugs. *Supra* at 3. Agent Pennock arrived at that conclusion based on text messages between the Source and Schaefer and what he knew about Schaefer's drug and criminal history. *Id.*; Docket 64 at 65, 82. But Schaefer is correct that Agent Pennock was unsure whether the 2015 controlled buy took place inside a gaming room or in Schaefer's car outside the gaming room. Docket 64 at 98-99. Thus, the objection is sustained in part. The finding of fact should state "a controlled buy from [Schaefer] took place *inside* a gaming room inside a bar, *or outside the bar in Schaefer's car.*" (modifications in italics).

Finally, Schaefer objects to the Report and Recommendation's finding that Agent Pennock "contacted Ms. Novak and discussed the investigation with her. He told Ms. Novak he believed he would find items of evidentiary value in Ms. Schaefer's home and asked for permission to conduct a 'reasonable suspicion' parole search." Docket 69 at 3 (quoting Docket 58 at 7). Schaefer

5

points out that neither Officer Novak nor Agent Pennock could recall the specific details of this conversation. *Id.* (citing Docket 64 at 65, 75, 78, 85).

Both Pennock and Officer Novak acknowledged that they were in contact regarding Schaefer leading up the May 19 parole search. Docket 64 at 22, 85. Agent Pennock described their communication as "ongoing," and he noted that he could not recall specific details because he did not document conversations with parole officers, including Officer Novak. *Id.* at 70-71, 85. When Agent Pennock contacted Officer Novak, he expressed his belief that he would find items of evidentiary value in Schaefer's home if it was searched. *Id.* at 71. So while Agent Pennock and Officer Novak could not recall more specific details about a particular conversation, their testimony supports the magistrate judge's finding. Thus, the objection is overruled.

The court has conducted a de novo review of the record and adopts the facts as set forth in Magistrate Judge Duffy's Report and Recommendation as modified herein.

## DISCUSSION

Schaefer's sole legal objection to the Report and Recommendation is that reasonable suspicion did not exist to search her person and residence on May 19, 2020. Docket 69 at 3.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. But "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms

6

enjoyed by law-abiding citizens," including Fourth Amendment protections. *United States v. Knights*, 534 U.S. 112, 119 (2001); *see also United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010) (citing *Knights*, 534 U.S. at 118-19) (applying the same analysis to parolees as to probationers). "When an officer has reasonable suspicion that a [parolee] subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the [parolee]'s significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121.

"Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time [of the search], the officer has a particularized and objective basis for suspecting wrongdoing." *Hamilton*, 591 F.3d at 1022 (citation omitted). Reasonable suspicion requires more than a "mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Martin*, 15 F.4th 878, 882 (8th Cir. 2021) (citation omitted). Reasonable suspicion can be based in part on a parolee's criminal history. *Hamilton*, 591 F.3d at 1023-24.

I. **Whether There Was a Particularized Basis for Reasonable Suspicion**

First, Schaefer argues that neither Officer Novak nor Agent Pennock had a "particularized basis for suspecting wrongdoing by Ms. Schaefer." Docket 69 at 4. As to Officer Novak, Schaefer once again relies on one line of testimony where Officer Novak stated "[s]pecifically I don't know" when she was asked "So

7

was there any new information in May [2020] that you didn't have in April [2020]?" *Id.* (citing Docket 64 at 17).

Schaefer's reliance on a selective reading of the hearing transcript is misplaced and overlooks other responses and details throughout Officer Novak's testimony. Officer Novak testified that she had been contacted by South Dakota law enforcement about Schaefer's alleged "drug activity" and they were "tracking her whereabouts." *Id.* (citing Docket 64 at 11). Officer Novak knew that Schaefer had been terminated from a drug abuse program for lack of attendance and participation. Docket 64 at 10. Officer Novak was aware of Schaefer's criminal history, which included drug use and distribution. *See id.* at 12, 26-27. She also knew that law enforcement had a warrant to track Schaefer's phone and that some information had come to law enforcement through an informant. *Id.* at 16. And she knew that Schaefer's suspected "drug-related activity" had "increased" in May 2020. *Id.* at 23. Office Novak observed that Schaefer appeared "nervous" and "stalling" when stopped by law enforcement at Casey's gas station on May 19, 2020. *Id.* at 25. Novak testified that these details in totality gave her reasonable suspicion that Schaefer was engaged in criminal activity at the time of the search on May 19, 2020. *See id.* at 27.

The information relied on by Officer Novak amounts to much more than an "inchoate hunch." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). Officer Novak relied on information from law enforcement and an informant as well as her own observations and what she knew about Schaefer's

8

criminal history to form reasonable suspicion. *See Navarette v. California*, 572 U.S. 393, 397 (2014) ("[R]easonable suspicion . . . is dependent upon both the content of information . . . and its degree of reliability." (cleaned up)). The court finds that the facts as stated in Officer Novak's testimony, when viewed in totality, provide a particularized, objective basis to conclude that Schaefer was engaged in criminal activity.

    Agent Pennock was also aware of Schaefer's criminal history, including distribution of narcotics. Docket 64 at 56, 82. Beginning in March 2020, Agent Pennock reviewed text messages between Schaefer and a Source describing a drug sale, and the Source told Agent Pennock that Schaefer received methamphetamine from Sioux City. *Id.* at 40-42. Agent Pennock viewed other text messages sent by Schaefer that were "consistent with other conversations that [he had] observed in other narcotics investigations." *Id.* at 43. Agent Pennock got a warrant to track Schaefer's phone from April 2 to May 15, 2020. *Id.* at 45.  Her phone records indicated to Agent Pennock that Schaefer was communicating with people known to law enforcement to be "involved in illegal drugs." *Id.* at 66-67. Although Schaefer did not take any trips to Sioux City while her phone was tracked, Agent Pennock stated that it was not uncommon for dealers to change and localize their supply. *Id.* at 48. During that same time period, Agent Pennock was informed that Schaefer, who was unemployed, drove throughout Yankton at all hours of the day and night and spent time at casinos—a location used by Schaefer for drug trafficking. *Id.* at 48-49, 70, 82.

9

The facts on which Agent Pennock based his reasonable suspicion came from a variety of means and sources and provided varying degrees of detail that amount to far more than a hunch, especially when viewed in totality. When viewed objectively, the court finds that Agent Pennock had a particularized basis forming reasonable suspicion to search Schaefer's residence on May 19, 2020.

## II. Whether the Gap in Time Between Alleged Criminal Activity and Parole Search Invalidated Reasonable Suspicion

Schaefer objects to the magistrate judge's conclusion based in part on a "significant gap in time between a tip related to possible criminal activity and the search in this case[.]" Docket 69 at 5. The Eighth Circuit has said that "[t]here is no bright-line test for determining when information is stale. . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008) (cleaned up). In narcotics cases, weeks or months may pass between the time when law enforcement receives information and applies for a warrant or conducts a search. *See id.*

Agent Pennock first started investigating Schaefer on March 2, 2020. Docket 64 at 55. One month later, Agent Pennock applied for, and the court issued, a search warrant and a Pen Register Trap and Trace for Schaefer's phone. *Id.* at 44-46. Agent Pennock's surveillance of Schaefer's phone continued until May 15, 2020. *Id.* at 45. Agent Pennock testified as to developments in the investigation after May 15:

> It's not uncommon for [law enforcement] to draft a second [Cell Site Location Information] or [Pen Register Trap and Trace] . . . but we believed that it was more likely that Mrs. Schaefer was having either illegal drugs delivered to her, or her source of supply had changed and was not local and in town, which is not uncommon in the narcotics investigation for sources of supply to change.

*Id.* at 48. When asked why law enforcement did not search Schaefer or her home earlier in the investigation, Agent Pennock testified that narcotics investigations are focused on identifying sources of supply instead of more quickly seizing smaller, user amounts. *Id.* at 60-61. On May 19, 2020, four days after law enforcement stopped monitoring Schaefer's phone, Agent Pennock, Officer Novak, and others attended a briefing on the investigation before locating Schaefer and searching her and her home. *Id.* at 75-76.

      Here, information regarding Schaefer's communications, movements, and suspected drug activities occurred throughout the two and half months leading up to the search. Schaefer was under active surveillance until just four days before the search took place. Any delay between starting the investigation and conducting the search can be attributed to the fact that Schaefer's suspected criminal activity involved narcotics. Thus, the court finds that the information law enforcement relied upon to conduct their search was not stale, and the length of time from the beginning of the investigation to the search did not defeat law enforcement's reasonable suspicion.

      Schaefer also objects to parole's and law enforcement's reliance on the search of her person, and her behavior during that search, to "enhance[] or solidif[y] their decision to search her house." Docket 69 at 5. Schaefer essentially argues that any "additional information" gleaned from the search of

her person should not contribute to reasonable suspicion to search her home, because the decision to search her home had been made before her person was searched. *Id.* "But the Fourth Amendment applies to the act of searching, not the initial decision to search, and it applies an objective standard based on the information known by the searching officers at the time of the search." *Hamilton*, 591 F.3d at 1022. So even though parole and law enforcement decided to search Schaefer's home before they searched her person, information from their encounter with Schaefer is properly considered in the reasonable suspicion analysis of the search of Schaefer's home.

## CONCLUSION

Both Agent Pennock and Officer Novak had an objective, particularized basis to search Schaefer and her home on May 19, 2020. The active investigation leading to the search did not contain a gap in time that would defeat reasonable suspicion at the time of the search. Thus, it is

ORDERED that the report and recommendation (Docket 58) is adopted as modified herein, and Schaefer's motion to suppress (Docket 41) is denied.

Dated December 2, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE